IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE OLIVEIRA-COUTINHO, | |
| Plaintiff, | 4:15CV3159 |
| v. | |
| SCOTT FRAKES, Director of Nebraska Dept of Correctional Services, sued in individual & official capacities, BRIAN GAGE, Warden of Tecumseh State Correctional Institution, sued in individual & official capacities, PATTI HUGHES, Legal Coordinator (TSCI Librarian) for Tecumseh State Correctional Institution, sued in individual & official capacities, BRAD HANSEN, Warden of Tecumseh State Correctional Institution, in his individual and official capacities, SCOTT BUSBOOM, Deputy Warden of Tecumseh State Correctional Institution, in his individual and official capacities, and APRIL BULLING-JUNE, Associate Warden of Tecumseh State Correctional Institution, in her individual and official capacities, | **MEMORANDUM AND ORDER** |
| Defendants. | |

After consideration of Plaintiff's complaint and amended complaint (Filings 1 & 17-1) as part of the court's initial review of Plaintiff's 42 U.S.C. § 1983 claims under 28 U.S.C. §§ 1915(e) and 1915A, the court determined that Plaintiff's "allegations, liberally construed, plausibly suggest that the defendants' library policies

impeded his constitutional right to access the courts in order to timely file a direct appeal from his three first-degree murder convictions and to file a postconviction motion based on actual innocence." (Filing 14 at CM/ECF p. 5.) Accordingly, this matter proceeded to service of process as to Plaintiff's access-to-the-courts claim for money damages against the defendants in their individual capacities, and against the same defendants in their official capacities for prospective injunctive relief only. (Filing 24 at CM/ECF p. 6.) The defendants have now filed a motion to dismiss. (Filing 29.)

## I. PLAINTIFF'S COMPLAINTS

Plaintiff alleges that he is serving consecutive life sentences for three first-degree murders, of which he claims to be innocent. (Filing 1 at CM/ECF p. 4.) Plaintiff—a native of Brazil who speaks Portuguese and does not understand Spanish or English well—claims that the defendants are, and have been, violating his First Amendment rights to access the courts because:

■ The Tecumseh State Correctional Institution ("TSCI"), where Plaintiff is an inmate, does not have Portuguese legal materials.

■ Plaintiff's prison legal aide does not have legal training; the aide speaks Spanish, but not Portuguese; and prison policy prohibits both the aide and other prisoners from doing Plaintiff's legal research and writing for him.

■ Plaintiff was only allowed one hour of law-library time per week from June 1 to November 1, 2015, and is now receiving three hours per week.

Plaintiff asserts that these deficiencies caused him to miss the December 7, 2015, deadline for filing a writ of certiorari (his "appeal claim"). While Plaintiff's complaints also state that he feared he would be unable to timely file a postconviction motion raising actual innocence unless he was afforded help from qualified and

trained legal aides and other prisoners, access to sufficient legal materials, and more time in the law library, Plaintiff now represents that he has succeeded in filing a timely motion for postconviction relief in state court (his "postconviction claim"). (Filing 1 at CM/ECF p. 5; Filing 33 at CM/ECF p. 12.)

Plaintiff requests $5 million in damages, as well as a preliminary injunction to provide "adequate law library access and/or legal counsel for postconviction." (Filing 1 at CM/ECF p. 6.)

## II. DEFENDANTS' MOTION TO DISMISS

The defendants, in their individual capacities only, move to dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to allege "actual injury"—that is, an arguable, nonfrivolous legal claim that has been frustrated or impeded by the defendants. (Filing 29; Filing 30 at CM/ECF pp. 5-6.)

As to Plaintiff's "appeal claim," Defendants argue that Plaintiff "fails to identify what arguments he would have raised in that petition for writ of certiorari, fails to assert that any of the claims he would have asserted in his petition for writ of certiorari were claims for which the U.S. Supreme Court would arguably have granted certiorari, and fails to describe whether those were claims for which the U.S. Supreme Court would have or could have granted relief." (Filing 30 at CM/ECF pp. 8-9.) Defendants also assert that Plaintiff's "postconviction claim" "cannot meet the nonfrivolous test for an access to the courts claim." (Filing 30 at CM/ECF p. 9.)

In response to the defendants' motion to dismiss, Plaintiff additionally alleges that his writ of certiorari (had he been allowed to file one in a timely fashion) would have raised "violations of Batson v. Kentucky and Sixth Amendment and Fourteenth Amendment," as well as violations of the Fourth and Fifth Amendments relevant to a motion to suppress and deportation of witnesses. Plaintiff also would have raised a "violation" of "Daubert v. Merrell Dow Pharmaceuticals and Schafersmas v. Agland

3

Coop." (Filing 33 at CM/ECF pp. 6-7.)  Plaintiff further argues that he "should not be required to demonstrate injury" because such injury may be presumed when an inmate is deprived of access to all legal materials.  (Filing 33 at CM/ECF p. 8.)

Contrary to his complaints, Plaintiff's brief in opposition to the defendants' motion to dismiss states that he actually "did timely file[] a State postconviction motion," but he believes it to be "frivolous and incomplete" with a "probability of being unsuccessful" as a result of "illiterate inmates" not having meaningful access to the courts.  (Filing 33 at CM/ECF p. 12.)

### III.  THE LAW

It is well established "that prisoners have a constitutional right of access to the courts" which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 821 & 828 (1977).  However, to recover for the deprivation of this constitutional right, "the inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  In other words, to prevail on an access-to-the-courts claim, a prisoner must establish that he sustained an "actual injury" by demonstrating "that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353.

"Actual injury" is not satisfied by demonstrating "just any type of frustrated legal claim."  Rather, inmates must only be provided the tools required to pursue direct appeals from convictions for which they are imprisoned, habeas petitions, and actions under 42 U.S.C. § 1983 to vindicate their basic constitutional rights.  *Lewis*, 518 U.S. at 354-55 (prisons may not impede an inmate's ability to "attack their sentences, directly or collaterally, and . . . challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the

4

incidental (and perfectly constitutional) consequences of conviction and incarceration.").

> When any inmate, even an illiterate or non-English-speaking inmate, shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates that the State has failed to furnish "*adequate* law libraries or *adequate* assistance from persons trained in the law," Bounds, 430 U.S., at 828, 97 S. Ct., at 1498 (emphasis added).

Lewis, 518 U.S. at 356.

To successfully state an access-to-the-courts claim, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Christopher v. Harbury, 536 U.S. 403, 416 (2002). The "lost" claim occasioned by the denial of an inmate's access to the courts must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id.

After considering Plaintiff's allegations, accepted as true and construed in the light most favorable to him, I conclude that Plaintiff has plausibly asserted that the defendants' library policies impeded his constitutional right to access the courts in order to timely file an appeal with the United States Supreme Court on specific constitutional grounds. While Plaintiff's ultimate success in this case is questionable[1],

---

[1] In this case, Plaintiff has filed a complaint, an amended complaint, and 16 motions and other filings. This alone belies his contention that the defendants have denied him access to the courts. Further, prison officials are charged with deciding how best to provide non-English-speaking inmates with legal resources to pursue their claims. Lewis, 518 U.S. at 356 ("[W]e leave it to prison officials to determine how best to ensure that inmates with language problems have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."); Bear v. Kautzky, 305 F.3d 802, 806 (8th Cir. 2002)

he has alleged enough to survive the defendants' motion to dismiss as to his "appeal" claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) ("[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties" (internal quotation marks and citations omitted)); *Waff v. S. Dakota Dep't of Corr.*, 51 F. App'x 615, 617 (8th Cir. 2002) (unpublished) (district court erred in pre-service dismissal of inmates' access-to-the-courts claim that prison policy required them to abandon memory and disk-based typewriters, word processors, and computers on which they stored legal work because inmates' complaint sufficiently alleged that policy hindered their efforts

---

("[T]here is no one prescribed method of ensuring inmate access to the courts. A prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices, so long as there is no actual harm to the access rights of particular inmates."). Finally, case law does not appear to support Plaintiff's claims. *Bear*, 305 F.3d at 804 n.2 & 805 ("[T]here is no absolute First Amendment right to communicate with other inmates about legal or other matters."; inmates have "no constitutional right to provide legal assistance to other inmates"); *Lambros v. Hawk*, 993 F. Supp. 1372, 1373 (D. Kan. 1998) (prisoner's constitutional right of access to courts did not entitle him to English translations of Brazilian law in order to research and challenge his arrest and extradition when prisoner only alleged "speculative harm"—that is, "that he [was] denied the opportunity to litigate issues regarding his arrest and extradition that he might find in the Brazilian resources"); *see, e.g.*, *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (habeas petitioner whose second language was English did not demonstrate extraordinary circumstances warranting equitable tolling of limitations period due to alleged language deficiency; "the Colorado Department of Corrections is under no duty to provide access to legal materials in a prisoner's preferred language"); *Mendoza v. Carey*, 449 F.3d 1065, 1070 n.5 (9th Cir. 2006) (in habeas equitable-tolling case, "we announce no rule affirmatively requiring that prisons provide legal materials in Spanish").

to pursue legal claims and inmates' affidavits referred to hindrance of habeas corpus litigation and pending court action).

However, as to Plaintiff's "postconviction claim," because Plaintiff now admits that he actually *has* filed a timely state postconviction action, his access-to-the-courts claim with regard to his feared inability to file such an action is now moot and should be dismissed.

Accordingly,

IT IS ORDERED:

1. Defendants' Motion to Dismiss (Filing 29) is granted in part insofar as Plaintiff's access-to-the-courts "postconviction claim" is concerned because such claim is now moot, and Defendants' Motion to Dismiss (Filing 29) is otherwise denied, leaving Plaintiff's access-to-the-courts "appeal claim" as the only pending claim in this case; and

2. Plaintiff's Request for Extension of Time (Filing 35) to respond to Defendants' Reply Brief in Support of Motion to Dismiss (Filing 34) is denied for the reasons that Plaintiff does not have an automatic right to file a response to a reply brief pursuant to NECivR 7.1(c) (no party may file further briefs after moving party files reply brief "without the court's leave") and because the court has ruled in Plaintiff's favor on the issue Plaintiff wished to address in additional briefing.

DATED this 10th day of May, 2017.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge